**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| MARSHALL GARBER, | ) | CASE NO.: 1:17-cv-01214 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| vs. | ) | |
| | ) | |
| | ) | **MOTION FOR SUMMARY** |
| HERIBERTO MENENDEZ, M.D., | ) | **JUDGMENT ON BEHALF OF** |
| | ) | **DEFENDANT HERIBERTO** |
| Defendant. | ) | **MENENDEZ, M.D.** |

Defendant Heriberto Menendez, M.D. moves this Court for summary judgment pursuant to Fed. R. Civ. P. 56 for the reason that there are no issues of material fact and that he is entitled to summary judgment as a matter of law. Summary judgment is appropriate for the following reasons: (1) Plaintiff is not entitled to application of the out-of-state tolling rule in Ohio Revised Code § 2305.15 because Ohio's Savings Statute, Ohio Revised Code § 2305.19(A) provides the exclusive remedy for a plaintiff who refiles a lawsuit after having it dismissed, and the savings statute does not permit tolling; (2) application of the out-of-state tolling rule in Ohio Revised Code § 2305.15 to indefinitely toll Plaintiff's claims would violate Defendant's rights under the dormant Commerce Clause and the Equal Protection Clause of the United States Constitution; and (3) Plaintiff's experts are not qualified and not competent to offer opinions on standard of care, which leaves Plaintiff unable to establish a *prima facie* claim for medical negligence against Defendant.

A Memorandum in support of this Motion is attached.

Respectfully submitted,

/s/ Kevin M. Norchi

_____

KEVIN M. NORCHI (0034659)
BRENDAN M. RICHARD (0085912)
**NORCHI FORBES LLC**
Commerce Park IV
23240 Chagrin Boulevard, Suite 210
Cleveland, Ohio 44122
Telephone:      (216) 514-9500
Facsimile:      (216) 514-4304
E-mail:        kmn@norchilaw.com
               brichard@norchilaw.com

Counsel for Defendant
Heriberto Menendez, M.D.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ........................................ viii

I. INTRODUCTION ................................................................................... 1

II. STATEMENT OF UNDISPUTED FACTS ............................................ 3

   A.  LIMITATIONS ................................................................................ 3

   B.  GARBER'S DESIGNATED EXPERTS ......................................... 4

      1.  Dr. Bomze does not devote more than 50% of his professional time to the active clinical practice as Ohio R. Evid. 601(D) requires ................................. 5

      2.  Dr. Venkatasubramanian does not practice in the same practice specialty as Dr. Menendez as Ohio R. Evid. 601(D) requires ........................................ 7

III. LAW AND ARGUMENT ...................................................................... 8

   A.  SUMMARY JUDGMENT STANDARD ......................................... 8

   B.  PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS ......... 9

      1.  Ohio's Savings Statute, Ohio Rev. Stat. § 2305.19(A), bars Garber from relying on § 2305.15's out-of-state tolling rule .......................................... 10

         a.  The Savings Statute provides the exclusive mechanism for a plaintiff to refile an action after having it dismissed – and it does not permit tolling ............ 10

         b.  Garber cannot invoke the Savings Statute more than once .................... 12

      2.  Application of § 2305.15's out-of-state tolling rule to Garber's claims would violate Dr. Menendez's rights under the United States Constitution ............................ 13

         a.  Applying § 2305.15 to toll claims against departing residents like Dr. Menendez violates the dormant Commerce Clause ................................ 14

         b.  § 2305.15(A)'s differential treatment of claims against resident and non-resident defendants also violates the Equal Protection Clause ............................ 18

   C.  PLAINTIFF'S STANDARD OF CARE EXPERTS ARE NOT QUALIFIED TO OFFER OPINIONS ON STANDARD OF CARE ......................................... 20

1.  Jeffrey Bomze, M.D. is a professional witness who is barred under Ohio law because he spends less than 50% of his time engaged in the active clinical practice of medicine ........................................................................22

2.  Plaintiff's Neurology expert, Chitra Venkatasubramanian, MBBS, M.D., is not qualified to offer an expert opinion regarding the standard of care by Defendant Dr. Menendez, a pediatrician ....................................................25

IV.  CONCLUSION.......................................................................................26

CERTIFICATE OF SERVICE ..........................................................................27

CERTIFICATION ...........................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*Aldridge v. Garner*, 159 Ohio App.3d 688, 2005-Ohio-829 (4th Dist.)............................................24

*Amadasu v. Mercy Franciscan Hosp.*, No. 1:01-cv-182, 2007 U.S. Dist. LEXIS 34405,
(S.D. Ohio May 10, 2007) ............................................................................................21

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .........................................................8. 9

*Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988).........................14, 15, 17

*Berlin v. Thompson,* 5th Dist. Stark No. 2007CA00115, 2007-Ohio-5700, 2007 WL
3105121 ........................................................................................................................24

*Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976) ..............................................21, 22, 26

*Buerger v. Ohio Dept. of Rehab. & Corr.*, 64 Ohio App.3d 394, 581 N.E.2d 1114 (1989)............21

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013).................................................................21

*Celmer v.Rodgers*, 114 Ohio St.3d 221, 2007-Ohio-3697, 871 N.E.2d 557........................22, 23, 24

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)..............................................................8, 9

*Coleman v. Dep't of Rehab. & Corr.*, 46 Fed.Appx. 765 (6th Cir. 2002).........................................10

*Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146 (6th Cir. 1995) ..........................................8

*Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002)..............................................................20

*Crosswhite v. Desai,* 64 Ohio App.3d 170, 580 N.E.2d 1119 (2d Dist.1989) ................................24

*Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992)......................................9

*Edwards v. California*, 314 U.S. 160 (1941)....................................................................18

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ...............................................................20

*Estate of Rodriguez v. United States*, 722 F. App'x 409, 414 (6th Cir. 2018)...........................21, 26

*Garber v. Menendez*, 888 F.3d 839 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1261 (2019) ..............15

*G.D. Searle & Co. v. Cohn*, 455 U.S. 404 (1982)..............................................................19

*Goolsby v. Anderson Concrete Corp.*, 575 N.E.2d 801 (Ohio 1991) ................................................. 19

*Hancock v. Kroger Co.*, 103 Ohio App.3d 266 (10th Dist. 1995) ...................................................... 13

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ............................................................. 19

*Johnson v. Abdullah*, 2019-Ohio-4861, 136 N.E.3d 581 (Ohio App. 1 Dist. 2019) ......................... 24

*LaPointe v. UAW, Local 600*, 8 F.4 376 (6th Cir. 1993) ..................................................................... 8

*Legg v. Chopra*, 286 F.3d 286 (6th Cir. 2002) .................................................................................... 21

*Lyons v. Brandly*, No. 4:03 CV 1620, 2009 U.S. Dist. LEXIS 131559
    (N.D. Ohio Mar. 10, 2009) ............................................................................................................. 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)) ........................................ 9

*McCrory v. State* (1981)*, 67 Ohio St.2d 99 ..................................................................................... 24

*Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) .......................................................................... 20

*Mihalcin v. Hocking College* (4th Dist.), 2000 Ohio App. LEXIS 1188* (2000) (Athens
    Cty.) ............................................................................................................................................... 13

*Mooney v. Cleveland Clinic Found.*, No. 99-4132, 2000 U.S. App. LEXIS 15585
    (6th Cir. June 23, 2000) ................................................................................................................. 26

*Moore v. Mount Carmel Health Sys.*, 2020-Ohio-4113 ............................................................... 10, 11

*Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335 (6th Cir. 1993) ............................................................ 8

*Nickell v. Gonzalez*, 17 Ohio St.3d 136, 477 N.E.2d 1145 (Ohio 1985) ........................................... 26

*O'Malley v. Forum Health,* 11th Dist. Trumbull No. 2012-T-0090, 2013-Ohio-2621,
    2013 WL 3211477 .......................................................................................................................... 24

*Pennoyer v. Neff*, 95 U.S. 714 (1877) ......................................................................................... 18, 19

*Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004) ............................................................................ 20

*Roberts v. Ohio Permanente Med. Group, Inc.*, 76 Ohio St.3d 483, 1996-Ohio-375, 668 N.E.2d 480 (Ohio 1996) ............................................................................................. 21

*Shapiro v. Thompson*, 394 U.S. 618, 630 (1969) ............................................................. 18

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) ............... 16

*Tolton v. American Biodyne, Inc.,* 48 F. 3d 937, 941 (6th Cir. 1995) .................................. 9

*VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574 (Fed. Cir.1990) ......................... 16

**Constitutional Provisions**                                                   **Page(s)**

U.S. Const. art. I, § 8, cl. 3 ............................................................................................ 14

U.S. Const. amend. XIV, § 1 .................................................................................. 14, 18, 19

**Statutes**                                                                    **Page(s)**

28 U.S.C. § 1517 ............................................................................................................. 17

Ohio Rev. Code § 2305.113 .............................................................................................. 4

Ohio Rev. Code § 2305.13 .............................................................................. 2, 9, 11, 12

Ohio Rev. Code § 2305.15 ................................................................. 9, 10, 11, 13, 14, 15, 17, 18, 19, 20

Ohio Rev. Code § 2305.16 ............................................................................................ 2, 3

Ohio Rev. Code § 2305.19 ............................................................................. 2, 3, 10, 11, 13

Ohio Rev. Code § 2307.382 ............................................................................................ 17

**Rules**                                                                  **Page(s)**

Fed.R.Evid. 201 .............................................................................................. 15

Fed.R.Evid. 601 .............................................................................................. 20

Fed. R. Civ. P. 12(b)(6) ................................................................................. 14

Fed. R. Civ. P. 56(c) ....................................................................................... 8

Ohio R. Civ. P. 3(a) ........................................................................................ 19

Ohio R. Civ. P. 3(A) ........................................................................... 3, 10, 11

Ohio R. Civ.P. 4.1(B) ..................................................................................... 20

Ohio R. Civ. P. 4.3 ......................................................................................... 20

Ohio R. Civ. P. 10(D)(2) .................................................................................. 3

Ohio R. Civ. P. 41(A) ..................................................................................... 11

Ohio R. Civ. P. 41(B) ..................................................................................... 11

Ohio R.Evid. 601 ............................................................... 2, 4, 5, 7, 20,
                                                                                21, 22, 23, 25

**Other Authorities**                                                      **Page(s)**

Jeffrey D. Brunken, Physicians Practice, *Malpractice Coverage Still Needed When
    Practicing Ends* (Aug. 30, 2015) ........................................................17

1 Robert C. Casad, *Jurisdiction in Civil Actions* (4th ed. 2017) ........................ 19

Colleen Chien, *Startups and Patent Trolls*, 17 Stan. Tech. L. Rev. 461 (2014) ...................15, 16

Dallas Morning News, *Why did Apple abandon Frisco? We can tell you in two words*, Mar.
    9, 2010 ...........................................................................................................17

Robin Feldman, *Patent Demands and Startup Companies: The View from the Venture
    Capital Community* 49 (UC Hastings Research Paper No. 75, 2013). ....................15

Stephen Kiebzak et al., *The Effect of Patent Litigation and Patent Assertion Entities on Entrepreneurial Activity* 3 (MIT Sloan Sch. of Mgmt., Working Paper No. 5095-14, 2015) ........................................................................................................................15

Peter Lattman, *Patent Trolls: Grazing the Piney Woods?*, Wall. St. J. Blog (Mar. 27, 2006), http://blogs.wsj.comlaw/2006/03/27/arepatent-trolls-grazing-the-east-texas-plains/.............16

Yan Leychkis, *Of Fire Ants and Claim Construction: An Empirical Study of the Meteoric Rise of the Eastern District of Texas as a Preeminent Forum for Patent Litigation*, 9 Yale J.L. & Tech. 193 (2007) ..............................................................................................16

Sam Williams, *A Haven for Patent Pirates*, Technology Review (Feb. 3, 2006), http://www.technologyreview.com/printer-friendly-articleaspx?id=16280; .........................16

SEAK, *The 10 Biggest Legal Mistakes Older Physicians Make in Retirement Arrangement*s, https://seak.com/blog/uncategorized/10-biggest-legal-mistakes-older-physicians-make-retirement-arrangements/ ........................................................................................17

*Small Town Attracts High Stakes IP Case*, Inside Counsel, Jul. 1, 2006, http://www.insidecounsel.conIssues/2006/July%202006/Pages/Small-Town-Attracts-High-Stakes-IP-Case.aspx .....................................................................................16

## STATEMENT OF ISSUES TO BE DECIDED

(1) Is Plaintiff entitled to application of the out-of-state tolling rule in Ohio Revised Code § 2305.15, when Ohio's Savings Statute, Ohio Revised Code § 2305.19(A) provides the exclusive remedy for a plaintiff who refiles a lawsuit after having it dismissed, and the savings statute does not permit tolling?

(2) Would application of the out-of-state tolling rule in Ohio Revised Code § 2305.15 to indefinitely toll Plaintiff's claims against Defendant violate Defendant's rights under the dormant Commerce Clause of the United States Constitution?

(3) Would application of the out-of-state tolling rule in Ohio Revised Code § 2305.15 to indefinitely toll Plaintiff's claims against Defendant violate Defendant's rights under the Equal Protection Clause of the United States Constitution?

(4) Did Plaintiff properly designate Dr. Jeffrey Bomze as an expert witness to testify on the standard of care applicable to Plaintiff's claims when Dr. Bomze does not devote more than 50% of his professional time to the active clinical practice of medicine, as Ohio R. Evid. 601(D) requires?

(5) Did Plaintiff properly designate Dr. Chitra Venkatasubramanian as an expert witness to testify on the standard of care applicable to Plaintiff's claims when Dr. Venkatasubramanian does not practice in the same practice specialty as Dr. Menendez, as Ohio R. Evid. 601(D) requires?

viii

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARSHALL GARBER, | ) | CASE NO.: 1:17-cv-01214 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| vs. | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION FOR SUMMARY** |
| HERIBERTO MENENDEZ, M.D., | ) | **JUDGMENT ON BEHALF OF** |
| | ) | **DEFENDANT HERIBERTO** |
| Defendant. | ) | **MENENDEZ, M.D.** |

## I.  INTRODUCTION

In November 2010, Dr. Heriberto Menendez treated fifteen-year-old Marshall Garber for fever, constipation, and back pain. (Notice of Removal, Ex. A (Complaint) ¶¶ 9-13, Doc# 2-1, PageID# 9). Three days later, Garber went to the emergency department at Samaritan Regional Hospital where he related these same routine symptoms, but then developed difficulty moving his legs and feet. (*Id.* ¶ 11). These new neurological symptoms led emergency medicine physicians to transfer Garber to Akron Children's Hospital where he was diagnosed with an alleged spinal epidural abscess – a rare mass in the epidural space of the thoracic spine that mechanically compresses the spinal cord. There he underwent surgical resection of the mass, but lost the use of his lower extremities. (*Id.* ¶ 12). Garber pleaded no facts to suggest he was having difficulty moving his legs and feet when Menendez treated him. Yet he still blamed Menendez for his injuries, claiming that the three-day delay in diagnosis was the cause of his injuries. (*Id.* ¶¶ 12, 13).

There are two independent reasons why Garber's claims cannot survive summary judgment. The first is that his claims are barred by the statute of limitations as a matter of law. It is undisputed that Garber did not commence this suit until more than seven years had passed since Dr. Menendez concluded his treatment of Garber. (Memorandum of Opinion and Order, Doc# 9,

PageID# 88). Even granting Garber the benefit of the special limitations rule provided in Ohio Rev. Code § 2305.16, which prevented limitations from running on Garber's claims until he reached the age of 18 in 2013, it is "undisputed" that the one-year limitations period for medical negligence claims had long expired by the time Garber brought suit in May 2017, and could not be revived by a second use of the savings statute. Ohio Rev. Code §§ 2305.13 and 2305.19. (*Id.*). Garber has insisted throughout this case that the limitations period on his claims was permanently tolled under the out-of-state tolling rule in Ohio Rev. Code § 2305.13 after Dr. Menendez retired from the practice of medicine and moved to Florida. However, Garber's attempt to invoke that tolling rule is barred by both Ohio statute and federal constitutional law. Accordingly, no tolling rule can permissibly apply in this case to make his three-years-too-late claims timely.

The second reason Garber's claims cannot go forward is that neither of Garber's designated experts can meet the rigorous standards to give competent expert testimony under Rule 601(D) of the Ohio Rules of Evidence. That rule requires an expert in a medical malpractice action to devote at least one-half of the witness's professional time to the active clinical practice of medicine. Yet one of Garber's designated experts, Dr. Jeffrey Bomze, is a Pediatrician and admits he does not devote that much time to the active clinical practice of medicine. Rule 601(D) also requires that an expert practice in the same or a substantially similar specialty as the defendant. While Dr. Menendez is a pediatrician, Garber's second designated witness, Dr. Chitra Venkatasubramanian is a neurologist, and has never practiced as a pediatrician. Accordingly, neither is competent to testify under applicable Ohio law. Without their testimony, which is necessary for Garber to establish the standard of care for his claims, Garber cannot establish a necessary element of his medical claim.

## II. STATEMENT OF UNDISPUTED FACTS

### A. LIMITATIONS

In April 2014, four years after Dr. Menendez's treatment of Garber ended, Dr. Menendez retired from the practice of medicine and moved permanently to Florida.[1] Because Garber was a minor at the time of his injuries, Ohio law tolled the state's one-year limitations period for medical malpractice claims, Ohio Rev. Code § 2305.113, until he turned 18, on August 5, 2013, *id*. § 2305.16. (Notice of Removal, Ex. A (Complaint) ¶ 2, Doc# 2-1, PageID# 8). Garber claimed no difficulty in locating Menendez, nor did he suggest that Menendez had absconded or concealed himself or was ever beyond reach of Ohio's long-arm statute when he left the state. Garber nonetheless had trouble commencing suit. Garber's first suit, filed on August 5, 2014, was timely – filed on the date the statutory limitations period expired – but it was still fatally defective because Garber failed to support the Complaint with an affidavit of merit from a medical expert required under Ohio Civil Rule 10(D)(2), and he failed to serve Dr. Menendez with the Complaint.[2]

Garber's first lawsuit was dismissed on February 17, 2015, which meant that he had to "commence" a new action within one year of the dismissal to satisfy Ohio's savings statute, Ohio Rev. Stat. § 2305.19(A).[3] On February 17, 2016, exactly one year later, Garber refiled his Complaint. But Garber again failed to obtain service on Dr. Menendez, as required to "commence" suit under Ohio Rule of Civil Procedure 3(A).[4] Accordingly, on April 5, 2017, Garber dismissed the lawsuit a second time.[5] Garber then filed a *third* lawsuit, on May 5, 2017, which initiated the

---

[1] *See* Affidavit of Heriberto Menendez, M.D. attached to Plaintiff's Complaint in the 2017 Lawsuit as Exhibit C (Doc# 2-1, PageID# 11).
[2] *See* Docket of Ashland County Court of Common Pleas, Case No. 14-CIV-200 (2014 Lawsuit), attached as Ex. A.
[3] *See* Ex. A. Judge Foersthoefel of the Ashland County Court of Common Pleas dismissed Plaintiff's Complaint for failure to comply with Civ.R. 10(D)(2), which mandates filing of affidavit of merit. "[A] dismissal for failure to comply with Civ.R. 10(D)(2) is an adjudication otherwise than on the merits." *Fletcher v. Univ. Hosps. of Cleveland* (2008), 120 Ohio St.3d 167, p. 172.
[4] *See* Docket of Ashland County Court of Common Pleas, Case No. 16-CIV-033 (2016 Lawsuit), attached as Ex. B.
[5] *See* Ex. B.

present action, and this was the only time a lawsuit was properly filed and served on Dr. Menendez. (*See* Notice of Removal, Ex. A, Doc# 2-1, PageID# 9). The pertinent dates are therefore as follows:

| | |
|---|---|
| 11/29/2010 | Date of alleged injury |
| 08/05/2013 | Plaintiff turns 18 years of age |
| 04/04/2014 | Defendant Dr. Menendez retires from medical practice and moves to FL |
| 08/05/2014 | Complaint filed (#1) Ashland County CCP |
| 08/05/2014 | Statute of limitations expired per Ohio Rev. Code §. 2305.113(A) |
| 02/17/2015 | Case dismissed by trial court upon motion of Defendant |
| 02/17/2016 | Complaint refiled (#2) Ashland County CCP |
| 03/22/2017 | Defendant files Motion to Dismiss for lack of service |
| 04/05/2017 | Case dismissed by Plaintiff per Ohio Civ.R. 41(A)(1)(a) |
| 05/05/2017 | Complaint filed (#3) Ashland County CCP |
| 06/09/2017 | Case transferred to Federal Court, USDC, on diversity. |

Yet this third lawsuit came too late under the applicable statute of limitations.

**B.  GARBER'S DESIGNATED EXPERTS**

Garber also has not designated any expert who can provide competent expert testimony to satisfy the elements of his medical claims against Dr. Menendez. Garber designated two separate experts. He designated Dr. Jeffrey Bomze, a "semi-retired" pediatrician, to testify on the applicable standard of care, and Dr. Chitra Venkatasubramanian, a neurologist, to testify about standard of care and causation. But neither proposed expert can satisfy the requirements of Ohio R. Evid. 601(D), which is applicable to a medical malpractice claim removed to federal court.

1. **Dr. Bomze does not devote more than 50% of his professional time to the active clinical practice of medicine, as Ohio R. Evid. 601(D) requires.**

When Plaintiff disclosed Jeffrey Bomze, M.D. as an expert witness on November 19, 2019 to testify as a standard of care expert witness, he was not qualified to offer expert opinion testimony. Dr. Bomze, a semi-retired pediatrician, does not devote more than 50% of his professional time to the active clinical practice of medicine, as Ohio R. Evid. 601(D) requires.

Dr. Bomze testified during deposition that he has been semi-retired since roughly 2017. (Deposition of Jeffrey Bomze, M.D., taken in *McDermott, et al. v. Erik Paul Schobitz, M.D., et al.*, at pp. 5:7 – 6:8; relevant portions attached hereto as Ex. C; a copy of transcript has been filed contemporaneously with this Motion). He now works 20 to 25 hours a week. And 50% of that professional time is in medical-legal matters, mostly defending adults accused of criminal abuse and neglect. (Deposition of Jeffrey Bomze, M.D.[6] at 12:8-21 (hereinafter "Bomze Depo. at ___"), relevant portions attached hereto as Exhibit D). The other "half" of his time involves "administrative work,"

> Q.  Okay. And what is the 25 hour – 20 to 25 hour week –
> A.  Well, it's –
> Q.  -- comprised of?
> A.  -- split. It's probably – and the other thing with case reviews is that I do criminal – mostly criminal defense, but sometimes plaintiff DA and criminal abuse and neglect cases. I've – so that's about half of my expert review work.
> Q.  Okay.
> A.  And so combined, it's probably half my time, and the other half of my time is doing the – my office clinic, in clinic, plus the school district, plus administrative work that I need to do for office and other things, my own administrative work.

*Id.* at pp. 12:22 – 13:14. In the remaining "half" of his time, he does "administrative work" and serves as a physician consultant for the local school district, where he helps develop school policies

---

[6] The deposition transcript of Jeffrey Bomze, M.D., is being filed contemporaneously with this Motion.

and individualized educational plans for disabled children. *Id.* at pp. 8:22 – 9:8; 12:22 – 13:14. These school-district-related activities amount to "maybe two" hours per week. *Id.* at p. 12:4-7. The only time he spends actively seeing patients is as an unpaid volunteer at a community clinic approximately 8-10 hours per week—well less than half of the 20 to 25 hours he spends on professional activities each week. *Id.* at p. 8:1-8.

The minimal emphasis that Dr. Bomze places on active clinical practice is confirmed by the way Dr. Bomze markets his practice. He is listed on multiple expert witness databases to advertise his services: SEAK, JurisPro, and ExpertPages. (*Id*, at pp. 29:14 – 30:4; 163:23 – 164:10).[7] Dr. Bomze also advertises his services as providing medical legal testimony on his own website, where he promotes his availability to testify as an expert for medical-legal work. (Bomze Depo. at p. 162:1-11). That website states: "Dr. Bomze provides consulting, opinions and expert witness testimony for medical malpractice and personal injury attorneys, both plaintiff and defense, and insurance providers, as well as performing independent medical examinations (IMEs)" https://www.jeffbomzemd.com/.

His de-emphasis on clinical practice is further confirmed by his income. Dr. Bomze makes approximately $250,000 - $300,000 annually testifying as an expert witness. *Id.* at pp. 162:12 – 163:9. In 2016, he made about $250,000. In 2015, he made around $300,000 from his legal work

---

[7] A Google search reveals the following services through which Dr. Bomze advertises his services in medical legal matters (*see* Ex. E, attached hereto):
https://www.jeffbomzemd.com/contact.htm
https://www.filereviewconsultants.com/search?utf8=%E2%9C%93&search%5Bquery%5D=bomze&search%5Bkind%5D=normal&search%5Bmixed%5D=&search%5Blocation%5D=&commit=Search
https://www.seakexperts.com/members/5926-jeffrey-p-bomze
https://www.jurispro.com/expert/jeffrey-bomze-md-faap-3829
https://expertpages.com/details.php/14378_14489_381_121.htm
https://www.expertlaw.com/profile/pediatrics/jeffrey-p-bomze
https://www.lexvisio.com/expert-witnesses/adolescent-family-medicine
https://www.alignable.com/wynnewood-pa/jeffrey-bomze-expert-consulting-llc

and it has been in that area for the last few years (2015, 2016, and 2017). In 2019, Dr. Bomze received a little over $200,000. (Bomze Depo. at p. 163:20-22). Dr. Bomze is also paid for his 2 hours per week of non-clinic work in the local school district. (Bomze Depo. at p. 12:4-7). Dr. Bomze is not competent to testify in a medical malpractice action under Ohio R. Evid. 601(D) because less than 50% of his professional time is in the active clinical practice of medicine and he is a professional witness.

### 2.  Dr. Venkatasubramanian does not practice in the same practice specialty as Dr. Menendez as Ohio R. Evid. 601(D) requires.

Ohio R. Evid. 601(D) also requires an expert testifying to the standard of care to practice in the same practice specialty as the defendant. Yet while Dr. Menendez is a pediatrician, Chitra Venkatasubramanian, MBBS, M.D., Plaintiff's second designated witness, does not practice, and has never practiced, as a pediatrician. Dr. Venkatasubramanian describes herself as "…**a general neurologist with additional sub-specialization in stroke neurology and neuro-intensive care."** (Deposition Transcript of Chitra Venkatasubramanian, MBBS, M.D. at p. 20:8-16, emphasis added (hereinafter "Venkatasubramanian Depo. at p. __"), attached as Exhibit F). Dr. Venkatasubramanian has neither trained nor practiced as a pediatrician. *Id.* at pp. 23:15-24:10.

> Q. Okay. As an attending physician, have you ever been a primary care
>    pediatric physician?
> A. No.

*Id.* at 25:9-11.

> A. You're asking me after I became an attending physician, have I worked in
>    a primary pediatric care office; is that – is that correct?
> Q. Yes.
> A. No, I have not.

*Id.* 40:14-18. Dr. Venkatasubramanian is not board certified in pediatrics:

> Q. Sure. You're not – you're not and never have been eligible to take the
>    pediatric board certification examination, correct?
> A. That's correct.

7

Q. Okay. And, of course, you're not board certified in pediatrics, correct?
A. I'm not.

*Id.* 26:7-13. Dr. Venkatasubramanian is not, and has never been, a pediatrician. As a neuro-intensivist in a large academic hospital, she is not competent to opine about the standard of care applicable to a primary care pediatrician like Dr. Menendez.

## III. LAW AND ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party: "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c), internal quotation omitted).

A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc*., 8 F.3d 335, 340 (6th Cir. 1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp*., 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a plaintiff cannot establish an essential element of his own claims, or if the defendant conclusively demonstrates the elements of a defense as a matter of law. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

## B. PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Garber did not commence this suit until well after until after the expiration of the applicable statute of limitations in Ohio Rev. Code § 2305.13. (Memorandum of Opinion and Order, Doc# 9, PageID# 88). However, Garber has insisted that his claims were saved by the out-of-state tolling rule in Ohio Rev. Code § 2305.15(A), which provides that if a defendant "departs from the state" after "a cause of action accrues," "the time of the person's absence … shall not be computed as any part" of the limitations period.[8] Garber maintains that this provision permanently tolled his

---

[8] Ohio Rev. Code § 2305.15(A) provides, in relevant part:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

claims after Dr. Menendez left the state to retire in 2014. (*Id.*). But both state and federal law prevent Garber from enjoying any benefit of § 2305.15(A)'s out-of-state tolling rule.

> **1. Ohio's Savings Statute, Ohio Rev. Stat. § 2305.19(A), bars Garber from relying on § 2305.15(A)'s out-of-state tolling rule.**

The state-law problem for Garber is that his invocation of § 2305.15(A)'s out-of-state tolling rule is barred by Ohio's savings statute – Ohio Rev. Stat. § 2305.19(A).[9] That savings provision gives a plaintiff who tries and fails to properly file a lawsuit a limited time in which to refile the suit, even if the suit would otherwise be barred by limitations. Yet the refiling period provided under the savings statute does not include time added by tolling rules like § 2305.15(A).

> **a. The Savings Statute provides the exclusive mechanism for a plaintiff who wishes to refile an action after having it dismissed—and it does not permit tolling.**

Ohio's Savings Statute is applicable in this case because where, as here, an action filed in federal court "use[s] a state's Statute of Limitations, [it] also use[s] its procedural rules affecting that Statute of Limitations[,]" including any savings statute. *Coleman v. Dep't of Rehab. & Corr.*, 46 Fed.Appx. 765, 769 (6th Cir. 2002). The savings statute applies "[i]n any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits." *Id.* Under the statute, "commencement" means more than filing – it means filing *plus* service within one year of the filing, as required by Ohio R. Civ. P. 3(A). *See Moore v. Mount Carmel Health Sys.*, 2020-Ohio-4113 (holding that

---

[9] Ohio Rev. Stat. § 2305.19(A) provides, in pertinent part:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or, if the plaintiff fails otherwise than upon the merits, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

"commencement" under § 2305.19(A) means "commencement in compliance with Rule 3(A)," including timely service). The savings statute's reference to "revers[al]" includes any kind of non-merits disposition, whether "a voluntary dismissal without prejudice under Civ. R. 41(A) or an involuntary dismissal without prejudice under Civ.R. 41(B)." *Moore v. Mount Carmel Health Sys.*, 2020-Ohio-4113 (Supreme Court of Ohio, Aug. 20, 2020).

Accordingly, when Garber filed his original lawsuit and then voluntarily dismissed it on February 17, 2015, after failing to properly serve Dr. Menendez, his new suit fell under the savings statute, § 2305.19(A) – because it applies "[i]n *any* action that is commenced or attempted to be commenced." This language indicates that § 2305.19(A) provides the *only* means for a plaintiff to restart a lawsuit after he "commences" it or "attempts to commence it" – only to have it reversed.

The statute gave Garber two – and only two – paths to follow, neither of which includes tolling. The first path was for him to "commence" an action within a year after the dismissal. Ohio Rev. Stat. § 2305.19(A). The second was for him to "commence" a new action "within the period of the original applicable statute of limitations." *Id.* While the second option does refer to "limitations," the "period" it describes does not include time added by statutory tolling provisions like § 2305.15(A). That period instead refers only to the "period of the *statute* of limitations" itself—*i.e.*, the *statute* where the period of limitations is laid out. In this case, that is Ohio Rev. Code § 2305.13, which gives a plaintiff in a medical malpractice action one year to bring suit. If the Legislature had intended to include periods in addition to that original statutory period, through tolling or other rules, it would have said so, perhaps referring to the "applicable *period* of limitations" or the "period of the original statute of limitations *plus any tolling*." But the statute was not worded in either of those says, and that means tolling rules are *not* included.

11

The logic of the Savings Statute is straightforward. It makes sense to give the plaintiff who tries and fails to file a lawsuit some additional time to refile the suit. Without some kind of grace period, a plaintiff who files on the verge of the expiration of the limitations period might not be able to refile before the original limitations period expired. The statute therefore generously gives the plaintiff an entire year to effectuate that new filing – or even longer if there is some time left under the original limitations period. But that year is all the plaintiff gets. The plaintiff does not get tolling on top of that year, because the plaintiff does not *need* tolling – he had already indicated his *readiness* to file suit through his *previous attempt* at filing suit.

But Garber's suit was not saved by the Savings Statute because he did not follow *either* of the paths the statute made available to him. He could not avail himself of the statute's second option – filing suit within the period of the statute of limitations – because the one-year period described in § 2305.13 had expired way back in 2011, one year after Menendez's treatment of Garber, or one year after the age of majority on August 5 2014. Garber also did not satisfy the first of the statute's options – commencing suit within a year of dismissal – because he did not successfully "commence" suit until May 2017, more than *two* years after his first suit was dismissed in February of 2015.

### b. Garber cannot invoke the Savings Statute more than once.

Garber cannot try to overcome this failure by seeking to invoke the Savings Statute twice: first to give him a year to file the second suit, and then, after *that* suit was dismissed, to give him another year to commence his third and final suit. The rule is clear in Ohio: The Saving Statute can be used *only once* to invoke *one* additional one-year time period in which to refile an action. *Thomas v. Freeman, 1997-Ohio-395, 79 Ohio St.3d 221, 680 N.E.2d 997* ("…the savings statute

can only be used once to refile a case." *citing with approval, Hancock v. Kroger Co.* (1995), 103

Ohio App.3d 266 (10th App. Dist.). Ohio's Fourth Appellate Court explained why:

> A plaintiff must satisfy at least two elements to employ the savings statute: (1) commencement of an action before the statute of limitations has expired, and (2) failure otherwise than upon the merits *after* the statute of limitations has expired. **When a plaintiff has already utilized the savings statute once, it necessarily means he has re-filed an action after the statute of limitations has expired**. Thus, an attempt to use the savings statute a second time (i.e. to file a third complaint) is an attempt to re-file an action (i.e. the second complaint) that was not commenced before the statute of limitations expired. The third complaint therefore fails to qualify for re-filing under R.C. 2305.19 because it constitutes an attempt to re-file an action that was *not* commenced before expiration of the statute of limitations. **Were the rule otherwise, a plaintiff could utilize the savings statute to keep a cause of action alive long past the time that the statute of limitations expired**. This would directly contradict the Ohio Supreme Court's pronouncement that R.C. 2305.19 is neither a tolling provision nor a statute of limitations unto itself.

*Mihalcin v. Hocking College*, 2000 Ohio App. LEXIS 1188 * (4th App. Dist.), (internal citations

omitted, emphasis added).

Accordingly, Garber might have been able to invoke the Savings Statute to make his second

lawsuit timely filed – if he had properly commenced service. But he did not do so. Even though

he filed suit on February 25, 2016, one year after his first suit was dismissed on February 25, 2015,

he failed to serve Dr. Menendez with that second suit, and was forced to dismiss it a second time.

That second failure cannot serve to make his third attempt timely. The Savings Statute cannot be

stretched that far. For this reason alone, Garber's suit must be dismissed.

## 2. Application of § 2305.15(A)'s out-of-state tolling rule to Garber's claims would violate Dr. Menendez's rights under the United States Constitution.

A second and independent problem with Garber's attempt to invoke § 2305.15(A)'s out-

of-state tolling rule is that any such attempt would be unconstitutional – a violation of Dr.

Menendez's rights under both the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3, and the Equal Protection Clause, *id.*, amend. XIV, § 1.

> **a. Applying § 2305.15(A) to toll claims against departing residents like Dr. Menendez violates the dormant Commerce Clause.**

This Court has previously held, in ruling on Dr. Menendez's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), that applying § 2305.15(A) "is unconstitutional as applied to this case" as it violates the dormant Commerce Clause to apply it to a resident who *departs* Ohio like Dr. Menendez, when it does not apply against residents who *stay* in Ohio. (Memorandum of Opinion and Order, Doc# 9, PageID# 93). This Court noted the United States Supreme Court's decision in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc*., 486 U.S. 888 (1988), which ruled that § 2305.15(A) could not be constitutionally applied in a closely analogous context – that  of "out of state" corporations, because it put those non-residents to a constitutionally impermissible choice not faced by local companies: "'expos[e]'" themselves "'to the general jurisdiction of Ohio courts'" by appointing a registered agent for service of process in the state, "'or forfeit[] … the limitations defense.'" (Memorandum of Opinion and Order, Doc# 9, PageID# 90-91, quoting 486 U.S. at 893-94). This Court applied Bendix to hold that § 2305.15(A) is also unconstitutional when applied to departing residents like Dr. Menendez, because it gave them "an even more draconian choice to make" than the statute provided to the corporation in *Bendix*, "because there is no mechanism by which an individual could register with the state for service of process" and obtain a limitations defense. (*Id.*, PageID# 91). The Court recognized that the only way a departing resident can end § 2305.15(A)'s perpetual liability is to turn around and return to Ohio. The Court therefore held that this burden on departing residents was "even greater than in *Bendix*." (*Id.*, PageID# 92).

14

The Sixth Circuit reversed that ruling, and the Supreme Court denied certiorari review. *Garber v. Menendez*, 888 F.3d 839 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 1261 (2019). But the Sixth Circuit did not foreclose Menendez's constitutional challenge entirely. It simply held that it would be premature for the Court to address it at the "motion to dismiss" stage, when the court could not consider "proof" in "assess[ing]" whether the statute posed a "potential cognizable burden on interstate commerce." *Id*. at 845. And it invited Dr. Menendez to offer "evidence" on the point on remand, on questions such as whether "Ohio doctors would alter (or have altered) their retirement plans based on any tolling of the statute of limitations." *Id*.

Dr. Menendez hereby offers that evidence now.[10] There is ample evidence that the out-of-state tolling rule in § 2305.15(A) poses restraints on doctors' retirement plans so significant that they could, and likely does, cause them to alter their retirement plans – evidence of which the Court can take judicial notice under Fed. R. Evid. 201. Multiple studies have shown that litigation risks have significant effects on the way individuals and companies structure and develop businesses. Companies forced to work under threats from patent holders, for example, spend far less on research and development than those that do not – regardless of the merits of those threats.[11] And in surveys, startup executives admit that litigation risks frequently force their firms to make substantial shifts in strategy or exit business lines entirely.[12] These surveys also show that the

---

[10] Dr. Menendez has claimed – and continues to claim – that he bears no burden to present evidence demonstrating § 2305.15's burdens on interstate commerce. *Bendix* required no such evidence, and no evidence should be required now, because *Bendix* has settled that question by holding that stripping non-residents of limitations protections, and subjecting them to indefinite liability, *does* impose "significant" burdens and cognizable effects on interstate commerce. 486 U.S. at 891. And this Court correctly concluded that the statute's burdens on departing residents are "even greater" than those at issue in *Bendix*. (Memorandum of Opinion and Order, Doc# 9, PageID# 92). That ought to foreclose the matter. Dr. Menendez understands that this court is bound to follow the Sixth Circuit's decision, but he wishes to preserve the argument to raise in any appeal that follows the entry of final judgment in this case.
[11] Stephen Kiebzak et al., *The Effect of Patent Litigation and Patent Assertion Entities on Entrepreneurial Activity* 3 (MIT Sloan Sch. of Mgmt., Working Paper No. 5095-14, 2015). (articles collectively attached hereto as Ex. H)
[12] Colleen Chien, *Startups and Patent Trolls*, 17 Stan. Tech. L. Rev. 461, 461-462 (2014); *see also* Robin Feldman, *Patent Demands and Startup Companies: The View from the Venture Capital Community* 49 (UC Hastings Research Paper No. 75, 2013). (Ex. H)

smaller a company is, the more likely it becomes that such threats will have a significant impact on the way the company operates. *Chien*, *supra*, at 462. As most doctors, and other individuals subject to professional liability claims and limitations, operate in small-business environments, this suggests that the effects of litigation risk on them will be significant.

Furthermore, evidence demonstrates that litigation risks frequently drive decisions about relocation. Collin County, Texas, provides a perfect illustration of the phenomenon in microcosm. Certain companies have tried to flee this small county directly to the north of Dallas to avoid litigation risk – specifically the risk of patent infringement. That is because portions of Collin County are included in the territory covered by the federal courts of the Eastern District of Texas. The Eastern District has had a long, well-documented history as a nightmare for defendants in patent cases, because its plaintiff-"predisposed" juries make it a "haven for patent pirates" and "a hotbed for 'patent trolls.'"[13] Supreme Court Justice Antonin Scalia called it "a renegade jurisdiction."[14] Companies that were targets of these patent trolls traditionally had trouble avoiding the forum because of liberal interpretations of the patent venue rules. Until recently, courts had liberally interpreted the patent venue rules so broadly as to allow plaintiffs to sue alleged patent infringers in any district where they might be subject to the court's personal jurisdiction. *See VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574 (Fed. Cir.1990). That changed with recent changes to patent venue rules resulting from the Supreme Court's decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), which now permit suit only in places where alleged infringers have an "established place of business," *id*. at 1516 (quoting 28

---

[13] Yan Leychkis, *Of Fire Ants and Claim Construction: An Empirical Study of the Meteoric Rise of the Eastern District of Texas as a Preeminent Forum for Patent Litigation*, 9 Yale J.L. & Tech. 193, 210-15 (2007); Sam Williams, *A Haven for Patent Pirates*, Technology Review (Feb. 3, 2006), http://www.technologyreview.com/printer-friendly-articleaspx?id=16280; Peter Lattman, *Patent Trolls: Grazing the Piney Woods?*, Wall. St. J. Blog (Mar. 27, 2006), http://blogs.wsj.comlaw/2006/03/27/arepatent-trolls-grazing-the-east-texas-plains/. (Ex. H)

[14] See *Small Town Attracts High Stakes IP Case*, Inside Counsel, Jul 1, 2006, http://www.insidecounsel.conIssues/2006/July%202006/Pages/Small-Town-Attracts-High-Stakes-IP-Case.aspx (Ex H)

U.S.C. § 1517). These new venue rules have made the "renegade" Eastern District easer to avoid. As a result, companies have responded by moving out of the district. Mere months after the ruling, Apple closed both of its retail stores in the Eastern District – ending the potential that they might be used as hooks for venue in the district, and trading geography, and profits, for risk mitigation. Dallas Morning News, *Why did Apple abandon Frisco? We can tell you in two words*, Mar. 9, 2010.

Tolling rules show the potential to have just as demonstrably powerful a force as these other litigation risks for those who are aware of them. After all, that is exactly why Ohio, along with so many other states, has been able to wield the hammer of § 2305.15(A)'s out-of-state tolling rules over non-resident companies as an incentive to require them to establish a presence in Ohio, by "appoint[ing] an agent for service of process in the State" and consenting "to general jurisdiction of the Ohio Courts. *See* Bendix, 486 U.S. at 892 & n.2 (citing Ohio Rev. Code § 2307.382). The sheer number of companies listed on the Ohio Secretary of State's website as having in-state registered agents, https://www.sos.state.oh.us/, speaks volumes about the strength of these incentives. If tolling rules are powerful enough to persuade companies to come to Ohio, establish a presence there, and consent to general jurisdiction here, there is no question that they are powerful enough to hinder doctors from leaving.

There is likewise little doubt that doctors are aware of, and responsive to, these tolling rules. Doctors are routinely advised to take limitations rules into consideration in their retirement planning.[15] Accordingly, there is ample evidence that § 2305.15(A)'s tolling rule poses restraints

---

[15]  SEAK, *The 10 Biggest Legal Mistakes Older Physicians Make in Retirement Arrangements*, https://seak.com/blog/uncategorized/10-biggest-legal-mistakes-older-physicians-make-retirement-arrangements/ (warning of tolling rules that "extend the statute of limitations applicable to minors for several years after a patient reaches the age of majority); Jeffrey D. Brunken, *Physicians Practice, Malpractice Coverage Still Needed When Practicing Ends* (Aug. 30, 2015) (advising physicians to "[u]nderstand how your state's statute of limitations applies to malpractice cases). (Ex. H)

on doctors' retirement plans significant enough to cause them to alter their retirement plans. As the Court held in its previous opinion in this case, those restraints impose burdens on interstate commerce because interstate transport itself "implicate[s] the Commerce Clause" under Supreme Court precedent, "'whether the transportation is commercial in nature'" or not. (Memorandum of Opinion and Order, Doc# 9, PageID# 92, quoting *Edwards v. California*, 314 U.S. 160 n.1 (1941)). Accordingly, enforcement of § 2305.15(A)'s tolling rule cannot be squared with the protections of the dormant Commerce Clause. For this reason alone, it cannot be enforced to toll Garber's claims against Dr. Menendez.

> **b. § 2305.15(A)'s differential treatment of claims against resident and non-resident defendants also violates the Equal Protection Clause.**

A second constitutional violation results from § 2305.15(A)'s operation in this case – one that renders it facially unconstitutional. § 2305.15(A) violates the Equal Protection Clause of the Constitution. The statute treats citizens differently based on their residences and their decisions to travel – tolling claims against departing residents when claims against a resident would not be tolled. That subjects the statute to strict scrutiny because it discourages people from traveling, and the "right to travel interstate" has been declared "fundamental." *Shapiro v. Thompson*, 394 U.S. 618, 630 (1969). That means it must be invalidated unless it is "necessary to promote a compelling governmental interest." *Id*. at 634.

If statutes like § 2305.15(A) ever served a compelling governmental interest, they do not do so now. These out-of-state tolling statutes were important during the period that state courts could only exercise jurisdiction over defendants served with process within the state. *Pennoyer v. Neff*, 95 U.S. 714, 722 (1877). In an era when obtaining jurisdiction over non-resident or physically absent defendants was impossible, these out-of-state tolling statutes protected plaintiffs by preventing limitations on their claims from expiring before they could effectuate the personal, in-

18

state service *Pennoyer* demanded. Distinguishing between in-state defendants and out-of-state defendants made perfect sense.

Yet after *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) made long-arm service on out-of-state defendants possible, and many states like Ohio responded by passing "long-arm" statutes that authorized suits against non-residents and provided means for serving them, that largely obviated any need for out-of-state tolling laws. *See* 1 Robert C. Casad, *Jurisdiction in Civil Actions* § 4.01[2][a] (4th ed. 2017). Many states, like Ohio, further aided their obsolescence by changing their rules to make filing suit, rather than effectuating service, the event satisfying limitations, thereby relieving the pressure to locate a defendant before limitations expired. *Goolsby v. Anderson Concrete Corp.*, 575 N.E.2d 801, 802 (Ohio 1991) (citing Ohio Civ. R. 3(a)). Yet courts held that these statutes still served a rational purpose, and continued to survive scrutiny under the Equal Protection Clause, because non-resident defendants "may not be so easy to find and serve" as resident defendants, and some long-arm statutes did not make "service upon" non-residents "the equivalent" of residents, imposing unique "conditions upon extraterritorial service" instead. *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 410 (1982).

But in Ohio at least, these rationalizations no longer pass muster under any level of constitutional scrutiny. In a world in which detailed information about a person's entire history and current location can be obtained at the push of a button on a computer terminal, it is no harder to locate a defendant who lives in another state than it is to locate one who lives down the street. Moreover, any suggestion that § 2305.15(A)'s burdens are still needed to ease plaintiffs' troubles in locating hard-to-find defendants is belied by the fact that § 2305.15(A)'s other provisions, which toll limitations whenever a defendant "abscond[s]" or is conceal[ed]," already do that. A generalized tolling statute simply is simply no longer necessary.

Ohio's procedural rules also cannot be held up as a reason to justify differential tolling rules for in-state and out-of-state defendants, because these rules make it just as easy to serve foreign defendants as local ones. In 2014, Ohio's rules for serving out-of-state defendants in Ohio R. Civ. P. 4.3 were "amended to be consistent with the provisions of Civ.R. 4.1(B) relating to personal service within the state." *Id.* (cmt. to 2014 amendments). Accordingly, under the rules in place when Garber filed this action, he would have had no more difficulty serving Dr. Menendez within the state than without. All he had to do was try.

Accordingly, tolling rules like § 2305.15(A) now survive solely as protectionist restraints on interstate commerce, preventing resident talent and resident dollars from leaving the state. But these purely protectionist motives will not justify the law under any level of scrutiny. *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) (holding that a Tennessee law requiring casket-merchants to obtain funeral-directing licenses failed even rational-basis review).[16] And that is another reason why § 2305.15(A) is unconstitutional. Without § 2305.15(A)'s tolling rule, Garber's claims are barred by limitations as a matter of law and must be dismissed on summary judgment.

### C. PLAINTIFF'S STANDARD OF CARE EXPERTS ARE NOT COMPETENT TO OFFER OPINIONS ON STANDARD OF CARE.

Summary judgment should also be granted because Garber's designated experts are not competent to testify under the Ohio Rules of Evidence. While it is true in federal diversity actions, state law generally governs substantive issues while federal law governs procedural issues,  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, (1938), including the rules for evidence, there is an exception for the rules governing witness competency. Fed. Evid. R. 601, which governs "competency to

---

[16] This question is the subject of a split among the circuits. Compare *Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008); *Powers v. Harris*, 379 F.3d 1208 (10th Cir. 2004) (both invalidating purely protectionist measures under rational-basis review) with *Powers v. Harris*, 379 F.3d 1208, 1221–23 (10th Cir. 2004) (holding that "absent a violation of a specific constitutional provision or other law, intrastate economic protectionism constitutes a legitimate state interest").

testify," provides that "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." This is because "[s]tate witness competency rules are often intimately intertwined with a state substantive rule." *Legg v. Chopra*, 286 F.3d 286, 290 (6th Cir. 2002).

Nowhere is this more true than in medical malpractice cases, which differ from traditional negligence cases in that the plaintiff "typically must show that the defendant breached an existing standard of care within the medical community, thus causing his injury." *Burgess v. Fischer*, 735 F.3d 462, 481 (6th Cir. 2013) (citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673, 677 (1976)). And "[i]n medical malpractice cases, Ohio law requires expert testimony to establish the applicable standard of care and proximate causation." *Estate of Rodriguez v. United States*, 722 F. App'x 409, 414 (6th Cir. 2018) (citing *Roberts v. Ohio Permanente Med. Group, Inc*., 76 Ohio St.3d 483, 1996-Ohio-375, 668 N.E.2d 480, 485 (Ohio 1996)). Therefore, "[e]xpert testimony is a necessary component to establish that the "chain of circumstances and events from which an inference may reasonably arise that the physician was negligent and that such negligence was the proximate cause of an impaired physical condition." *Lyons v. Brandly*, No. 4:03 CV 1620, 2009 U.S. Dist. LEXIS 131559, at *8 (N.D. Ohio Mar. 10, 2009) (citing *Buerger v. Ohio Dept. of Rehab. & Corr*., 64 Ohio App.3d 394, 400, 581 N.E.2d 1114 (1989)). Where "plaintiff's malpractice claims invoke diversity jurisdiction, witness competency issues are [therefore] properly determined under state law." *Amadasu v. Mercy Franciscan Hosp*., No. 1:01-cv-182, 2007 U.S. Dist. LEXIS 34405, at *3 (S.D. Ohio, May 10, 2007). In Ohio, providing the required expert testimony requires compliance with Ohio Evid. R. 601(D) which requires that:

> (1) The person testifying is licensed to practice medicine and surgery * * * by the state medical board or by the licensing authority of any state; (2) [t]he person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an

accredited school and (3) [t]he person practices in the same or a substantially similar specialty as the defendant.

Yet neither of Plaintiff's expert witnesses[17], Dr. Bomze or Dr. Venkatasubramanian, can meet Ohio Evid. R. 601(D)'s requirements to give competent standard-of-care testimony.[18]

> **1. Jeffrey Bomze, M.D. is a professional witness who is barred under Ohio law because he spends less than 50% of his time engaged in the active clinical practice of medicine.**

Experts testifying about the applicable standard of care in medical malpractice matters are required by Ohio Rule of Evidence 601(D) to spend 50% or more of their time in the active clinical practice of medicine. Specifically, Evid. R. 601(D) requires the expert offering standard of care opinions to "devote[] at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school." Ohio Evid. R. 601(D). The Supreme Court of Ohio has explained that "[t]he purpose of Evid. R. 601(D) is to prohibit a physician who makes his living as a professional witness from testifying on the liability of physicians who devote their professional time to the treatment of patients." *Celmer v. Rodgers*, 2007-Ohio-3697, ¶ 23, 114 Ohio St.3d 221, 226, 871 N.E.2d 557, 562 (internal citations omitted).

By Dr. Bomze's own admission, he does not spend the required 50% of his time in the active clinical practice of medicine. In this case, it has been established that Dr. Bomze considers himself to be "semi-retired." He has not provided ongoing clinical care – other than volunteer activities at the local community clinic two half-days per week. This is far less than 50% of his professional time. Dr. Bomze concedes he spends 50% of his time on expert legal work alone, with the remainder of his time divided among administrative work, non-clinical work with public schools, and clinical practice. Bomze Depo. at pp. 12:22 - 13:14. Even assuming that the non-

---

[17] Plaintiff expert, Scott Berger, M.D., is neuroradiologist, does not hold himself out as a pediatrician, and is a rebuttal witness.
[18] See, e.g. *Bruni v. Tatsumi*, (1976) 46 Ohio St.2d 127, 346 N.E.2d 673.

clinical practice occupied only 1% of Dr. Bonze's time, that would leave only 49% clinical work, below the threshold for expert testimony in Ohio. Dr. Bomze does not meet the active clinical practice requirement imposed by Rule 601(D).

Further, by any objective measure, Dr. Bomze is a professional witness. He reviews and testifies in 12-15 cases per year and makes in excess of $200,000 annually from his activities as an expert witness.[19] His only other professional income is from money he receives from the local school district overseeing the school policies and IEPs (Individual Education Plans) approximately 2 hours per week. That is simply not enough to meet the rigorous standards of Rule 601(D).

Plaintiff will likely argue that an exception should be made for Dr. Bomze because, back in 2010, when the alleged negligence took place, Dr. Bomze was spending more than 50% of his time in the active clinical practice of medicine. But the Ohio Supreme Court has interpreted Rule 601(D), which uses the present tense, to require that the expert meet the rule's requirements – including the 50% practice threshold – "*at the time the testimony is offered at trial*," not sometime *years* before. *Celmer v. Rodgers,* 114 Ohio St.3d 221, 2007-Ohio-3697, ¶ 27 (emphasis added). While it is true that a limited exception to this rule was recognized in *Celmer* itself, and the Supreme Court allowed a retired physician to testify in a malpractice case, the circumstances of that exception proves the proper narrowness of the rule.

In *Celmer*, the physician was not a professional witness. He had been practicing at the time he was designated to testify but had simply retired by the time the case went to trial. *Id*. ¶ 25. In upholding the trial court's decision to allow a retired physician's testimony, the Supreme Court in

---

[19] Dr. Bomze earned around $90,000 from forensic work in 2013 (Depo. Transcr. Dr. Bomze, *Frieda Bikele, et el. v. Adventist Healthcare, Inc., et al*. August 26, 2014 (48:10-17) (relevant portions attached hereto as Ex. G; copy of transcript has been filed contemporaneously with this Motion). He earned $300,000 from medical legal work in in 2015. *McDermott, et al. v. Schobitz, M.D., et al*. December 19, 2017 (217:21-218:10). He earned $250,000 from medical legal work in in 2016. *McDermott, et al. v. Schobitz, M.D., et al*. December 19, 2017 (217:7-19) (*see* Ex. C).

*Celmer* took pains to note the uniqueness of the circumstances, and the fact that they were largely created by the opposing counsel:

> In a medical malpractice action where trial continuances requested by the defense and the insolvency of a defendant's carrier delay trial for such time as the plaintiff's medical expert no longer devotes one-half of his professional time to the active clinical practice of medicine, and where the medical expert is not a professional witness, a trial court has discretion to permit that witness to testify as an expert at trial.

*Celmer v. Rodgers,* 2007-Ohio-3697, ¶ 27. Ohio courts following *Celmer* have given its exception a narrow reading, because anything broader "risks allowing the exception to swallow the general rule that the expert devote one-half of his professional time to active clinical practice at the time of testifying." *Johnson v. Abdullah*, 136 N.E.3d 581 (Ohio App. 1 Dist. 2019). The rule should not become one in which any expert can testify just because, *at some point in his career*, he engaged in the active clinical practice of medicine. *Id.* at p. 593 (citing *Celmer* at ¶ 27). And accordingly, the better view has been to confine *Celmer*'s exception to instances in which a practicing expert retires only because of delays caused by the other side. *Berlin v. Thompson,* 5th Dist. Stark No. 2007CA00115, 2007-Ohio-5700, 2007 WL 3105121, ¶¶ 18, 20 (declining to extend *Celmer* to appellant's case "since the [a]ppellant does not assert delay caused by appellees."). Cases allowing a retired physician to testify have all done so only because the expert was not retired at the time he was designated. [20]

---

[20] See *O'Malley v. Forum Health,* 11th Dist. Trumbull No. 2012-T-0090, 2013-Ohio-2621 ¶ 36 (finding the medical expert satisfied the active clinical practice requirement despite his retirement from the practice of medicine prior to trial, because of his length of practice, extensive experiential background, and the fact that he was engaged in active clinical practice at the time the cause of action accrued); *Aldridge*, 159 Ohio App.3d 688, 2005-Ohio-829, 825 N.E.2d 201, at ¶ 18 (holding that despite the medical expert's failure to satisfy "active clinical practice" at the time of trial, based upon the expert's length of practice and his engagement in the active clinical practice of medicine during the time of the defendant's alleged malpractice, the expert "satisfie[d] the purpose intended by the active-clinical-practice rule."); *Crosswhite v. Desai,* 64 Ohio App.3d 170, 179, 580 N.E.2d 1119 (2d Dist.1989) (finding that despite the physician's retirement from practicing medicine at the time of his testimony, he satisfied the active clinical practice requirement – citing *McCrory v. State,* 67 Ohio St. 2d 99, 423 N.E. 2d 156 (1981) for support).

Here by contrast, Dr. Bomze has not been forced to violate the rule by Dr. Menendez's actions. Nor has his retirement status changed during this case. He began the case as a retired professional witness. He remains a professional witness now. That will not satisfy the rule and that means he cannot testify as to standard of care. Without Dr. Bomze's expert testimony. Garber's medical malpractice claims must be dismissed.

### 2. Plaintiff's Neurology expert, Chitra Venkatasubramanian, MBBS, M.D. is not qualified to offer an expert opinion regarding the standard of care by Defendant Dr. Menendez, a pediatrician.

Plaintiff's second expert Chitra Venkatasubramanian, MBBS, M.D. cannot make up for the incompetence of his first, because Dr. Venkatasubramanian also cannot satisfy Rule 601(D). That rule bars an expert from testifying in a medical malpractice case unless:

> (3)  The person practices in the same or a substantially similar specialty as the defendant. The court shall not permit an expert in one medical specialty to testify against a health care provider in another medical specialty unless **the expert shows both that the standards of care and practice in the two specialties are similar and that the expert has substantial familiarity between the specialties.**

Ohio Evid. R. 601(D), in pertinent part, emphasis added. Here, Dr. Venkatasubramanian is not a board-certified pediatrician and has never practiced as a pediatrician. Dr. Venkatasubramanian is a general neurologist with additional sub-specialization in stroke neurology and neurointensive care who has not spent a day in practice as a pediatrician. She is, therefore, also not competent to testify under Ohio law as to the standard of care. Ohio Evid. R. 601(D).

Without any testimony as to the standard of care that applied to Dr. Menendez or any testimony about the breach of that standard of care, Plaintiff cannot make a *prima facie* case of medical negligence, and summary judgment is indicated. The Sixth Circuit routinely affirms summary judgment in medical negligence cases where plaintiff fails to meet their burden and produce the required expert testimony. In medical malpractice cases, "[t]he nature of plaintiff's

claims are such that a genuine issue of material fact remaining for trial cannot be shown without expert evidence that plaintiff was unable to produce." *Mooney v. Cleveland Clinic Found.*, No. 99-4132, 2000 U.S. App. LEXIS 15585, at *3 (6th Cir. June 23, 2000) (citing *Nickell v. Gonzalez*, 17 Ohio St.3d 136, 477 N.E.2d 1145, 1146 (Ohio 1985) (syllabus) and *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673, 675 (Ohio 1976) (syllabus P 1)); *see also Estate of Rodriguez v. United States*, 722 F. App'x 409 (6th Cir. 2018). And this Court should do the same in this case.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Heriberto Menendez, M.D. respectfully requests the Court to issue summary judgment in his favor and dismiss the case with prejudice.

Respectfully submitted,

*/s/ Kevin M. Norchi*
_____
KEVIN M. NORCHI (0034659)
BRENDAN M. RICHARD (0085912)
**NORCHI FORBES LLC**
Commerce Park IV
23240 Chagrin Boulevard, Suite 210
Cleveland, Ohio 44122
Telephone:     (216) 514-9500
Facsimile:     (216) 514-4304
E-mail:          kmn@norchilaw.com
                     brichard@norchilaw.com

Counsel for Defendant
Heriberto Menendez, M.D.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of September, 2020, the foregoing Motion for Summary Judgment on Behalf of Defendant Heriberto Menendez, M.D., was filed via the Court's electronic filing system (NextGen CM/ECF), which will send electronic notification of such filing to all parties represented by attorneys who are registered NextGen CM/ECF users. A courtesy copy has also been sent, via electronic mail only, to:

Jacob J. Beausay, Esq.
Beausay & Nichols Law Firm
7650 Rivers Edge Dr., Suite 150
Columbus, Ohio 43235
jjb@beausaylaw.com
Attorney for Plaintiff


/s/ Kevin M. Norchi

_____
One of the Attorneys for Defendant

475.0023

## <u>CERTIFICATION</u>

I, Kevin M. Norchi, certify:

1. At the time of filing this Motion, this case is on a complex case management track.

2. Local Rule 7.1(f) provides that memoranda relating to dispositive motion in complex cases shall not exceed thirty (30) pages. This Motion does not exceed 30 pages.

*/s/ Kevin M. Norchi*

KEVIN M. NORCHI (0034659)