**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Marshall Garber, | ) | **CASE NO. 1:17 CV 1214** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| Heriberto Menendez, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion for Summary Judgment on Behalf of Defendant Heriberto Menendez, M.D. (Doc. 43).  This is a malpractice action.  For the reasons that follow, the motion is DENIED.

**FACTS**

For purposes of this motion, the facts of the case are largely undisputed.

Plaintiff Marshall Garber brings lawsuit against defendant Dr. Heriberto Menendez. Defendant was plaintiff's pediatrician.  On November 19, 2010, plaintiff's mother took him to

1

see defendant.  Plaintiff complained of fever, constipation, and back pain.  Defendant prescribed a pain mediation and told plaintiff's mother to follow up in three days.  Two days later, plaintiff's mother called defendant and reported an increase in pain, despite use of the pain medication.  In response, defendant ordered physical therapy and prescribed an increase in the frequency of the pain medication.  The following day, plaintiff's mother took plaintiff to the emergency room at a regional medical center.  While in the emergency room, plaintiff lost neurological functioning in his legs.  The medical center sent plaintiff *via* helicopter to Akron Children's Hospital.  The doctor ordered an MRI, which showed an epidural abscess.  Plaintiff underwent surgery to remove the mass, but did not recover the use of function in his bowel, bladder, and lower extremities.

Plaintiff, a minor at the time, turned 18 on August 5, 2013.  On April 4, 2014, defendant retired and relocated to Florida.

This lawsuit is the third lawsuit filed on plaintiff's behalf.  On August 5, 2014, plaintiff filed a lawsuit in state court.  The state court dismissed the action for failure to file an affidavit of merit.  On February 17, 2016,  plaintiff refiled the August 5, 2014 lawsuit.  Defendant moved to dismiss for lack of service.  Prior to obtaining a ruling on the motion, plaintiff filed a notice of voluntary dismissal, purportedly without prejudice.

Thereafter, on May 5, 2017, plaintiff filed the instant action in state court.  Defendant removed the matter to this Court.  Defendant thereafter moved to dismiss the complaint on statute of limitations grounds.  The Court granted the motion, on the grounds that O.R.C. § 2305.15(A), which provides that the statute of limitations does not begin to run until an out-of-state defendant returns to Ohio, violates the Commerce Clause.  The Sixth Circuit reversed this

Court's decision and remanded for further proceedings.

Defendant now moves for summary judgment and plaintiff opposes the motion.

**STANDARD OF REVIEW**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56©).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993).  The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in

3

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

## ANALYSIS

Defendant moves for summary judgment on three grounds.  Defendant argues that plaintiff's claims are barred by the statute of limitations because plaintiff cannot benefit from "double tolling."  Defendant again argues that O.R.C. § 2305.15(A) is unconstitutional.  Defendant also claims that summary judgment is required because plaintiff's experts do not meet the requirements of Ohio Rule of Evidence 601(E).  Plaintiff opposes defendant's arguments.  Each will be addressed in turn.

1.      Tolling

Defendant argues that O.R.C. § 2305.19(A) prevents plaintiff from relying on O.R.C. § 2305.15(A).  As such, plaintiff's claims are time-barred.   Plaintiff disputes this contention.

O.R.C. § 2305.113 requires that medical malpractice claims be asserted within one year of the date the claim accrued.  If a claim accrues while a plaintiff is a minor, the statute of limitations is tolled such that the claim may be asserted within one year of plaintiff's eighteenth birthday.  O.R.C. §2305.16.  Thus, absent other provisions, plaintiff's claim had to be filed no later than August 5, 2014.  Plaintiff timely filed his first action on August 5, 2014.  On February

4

17, 2015, the state court dismissed the action without prejudice.  Exactly one year later, plaintiff refiled his case.  Plaintiff later voluntarily dismissed the action, purportedly without prejudice. Plaintiff did not file this case until May 5, 2017, which is more than one year after plaintiff's eighteenth birthday.

Plaintiff maintains that another provision serves to toll his claims here.  Plaintiff argues that Section 2305.15(A) applies since defendant retired and moved to Florida on April 4, 2014. Section 2305.15(A) provides as follows:

> When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.35 of the Revised Code does not begin to run until the person comes into the state or while the person is so absconded or concealed. After the cause of action accrues if the person departs from the state, absconds, or conceals self, the time of the person's absence or concealment shall not be computed as any part of a period within which the action must be brought.

There is no indication that defendant returned to Ohio after his retirement.  As such, pursuant to this provision, the statute of limitations has not expired.  The cause of action accrued in late November or December of 2010.  Pursuant to O.R.C. §§ 2305.113 and 2305.16, the statute of limitations, which would have expired in November or December of 2011, was tolled through August 5, 2014, the day plaintiff reached nineteen years of age.  But, because defendant permanently left the state of Ohio after the cause of action accrued, O.R.C. § 2305.15(A) requires that none of defendant's time away may "be computed as any part of a period within which the action must be brought."  Here, defendant permanently left Ohio on April 4, 2014. Thus, at a minimum,  defendant left the state four months prior to the time allotted for plaintiff to bring his lawsuit.  Because defendant never returned, this four-month period continuously tolls the statute of limitations.

5

Defendant argues, however, that O.R.C. § 2305.19(A) prevents plaintiff from relying on the "out of state" tolling provisions contained in O.R.C. § 2305.15(A).  Section 2305.19(A) provides:

> (A) In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

This statute is commonly referred to as Ohio's "savings statute."  According to defendant, plaintiff already filed an action against defendant.  As such, Section 2305.19(A) "provides the exclusive mechanism for a plaintiff who wishes to refile an action."   Defendant further argues that it is well-settled that a party may not invoke the savings statute more than once.  Because this case would involve a second application of the savings statute, the claim is time-barred. Plaintiff argues that there is no indication that Section 2305.19(A) provides an exclusive method.  Instead, plaintiff is able to rely on Section's 2305.15(A)'s out-of-state tolling provision.  Because the statute of limitations has not yet expired due to tolling, Section 2305.19(A) is wholly inapplicable.

On its face, the savings statute provides: "In *any* action that is commenced or attempted to be commenced...if the plaintiff fails otherwise than upon the merits, the plaintiff... may commence a new action within one year after the...failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later...." O.R.C. § 2305.19(A) (Emphasis added).  The Court is not entirely convinced that defendant's reading is correct.  Although the statute applies to "any action" defendant appears to argue that if

6

an action is commenced, then a party filing a second action *must* necessarily comply with Section 2305.19(A).  But, the statute is not written as such.  Rather, a  savings statute is typically just that–a statute that "saves" an otherwise time-barred claim.  The statute does not say that a party may commence a new action "only" if that action is filed within one year or within the period of the original applicable statute of limitations.  Rather, it is permissive–it confers upon a party certain rights to refile an action in the event a statute of limitations argument is raised.  In addition, the statute corrected a problem that arose due to judicial delay.  Prior to the amended statute, a party who filed a timely lawsuit could be penalized for a delayed ruling.  For example, if a plaintiff filed a lawsuit one year prior to the expiration of the statute of limitations, but the Court dismissed the lawsuit 364 days later, the savings statute would not apply to any subsequent refiling since the dismissal occurred prior to the expiration of the statute of limitations.  In that case, plaintiff would be required to refile his lawsuit the next day in order for the lawsuit to be considered timely filed.  Under the current version, plaintiffs now have the benefit of having at least one year from the date of dismissal to refile their claims.  Thus, the Court cannot say that the intent of the legislature was to require that all cases (even those with no statute of limitations concerns) be "asserted" under the savings statute.

The Court need not resolve this issue.  Assuming *arguendo* that Section 2305.19(A) applies to this case, the Court finds that plaintiff's claim is not automatically time-barred based on the fact that he relies on the savings statute for a second time.   According to defendant, plaintiff cannot invoke the statute more than once.  Because plaintiff necessarily relied on it with respect to the second filing, it cannot be relied on here.  Defendant cites case law from Ohio courts, including the Ohio Supreme Court, in support of his contention that it is black letter law

7

that a plaintiff can only invoke the savings clause once.  The fundamental problem with defendant's argument is that all of the cited law is based on the prior version of the savings statute.[1]  The prior version contained an express requirement that the statute could *only* be invoked if the refiled claim was *already* time-barred at the time of the filing of the second lawsuit.  Not so anymore.[2]  And, of course it makes perfect sense that the savings statute could only be invoked once under the prior statute because the claim was already time-barred as of the date of the refiling.  The Court finds that the better reasoned approach is that for claims asserted under the second part of the savings statute, *i.e.*, timely, reasserted claims, no statute of limitations defense exists if the statute of limitations has not yet run as of the date of the refiling.  This approach allows the assertion of timely claims.  This does not negate other defenses–including defenses based on the "double dismissal rule.[3]"  The Court finds that the rule

---

[1]     The prior version of the savings statute provided, "In an action commenced...if plaintiff fails otherwise than upon the merits, and the time limited for the commencement of such action at the date of reversal...has expired, the plaintiff...may commence a new action within one year after such date."

[2]     For this reason, the second "element" defendant cites is no longer relevant.  Defendant argues that a plaintiff must satisfy at least two elements in order to rely on Section 2305.19: "(1) commencement of an action before the statute of limitations has expired, and (2) failure otherwise than upon the merits after the statute of limitations has expired." (Doc. 42 at PageID 335).  But element two is no longer statutorily required.

[3]     Defendant agues that the double dismissal rule is not at issue here.  But, that is part of the problem.  To accept defendant's argument that the savings statute applies to all claims– regardless of timeliness–would appear to wholly eviscerate the double dismissal rule.  There would be no need for the last sentence of Oh.R.Civ.Proc. 41(A)(1) as the savings statute would bar every third filing regardless of the nature of the dismissal.  Courts should not read on statutory provision in a way that renders superfluous

does not apply to claims purportedly asserted under the current savings statute that are still timely on the date of the third filing.  The fact that this case is a third filing, does not automatically result in a valid statute of limitations defense.

The court now turns to whether plaintiff's claim is timely.  If the savings statute does not apply, the Court finds that the claim is timely.  *See, e.g.*, *Butler v. Harper*, 2002 WL 31114898 (Oh. Ct. App. Sept. 25, 2002) ("As the statute of limitations is tolled or suspended until [the minor-plaintiffs] reach the age of majority, their [third] complaint was not re-filed beyond the applicable time limitations outlined by the statute.").  As set forth above, defendant departed the state after the claim accrued with four months remaining prior to the expiration of the applicable statute of limitations.  Defendant turned eighteen on August 5, 2013.  As such, plaintiff had until August 5, 2014, to timely file his lawsuit.  But, four months before this date– on April 4, 2014– defendant left the state of Ohio.  Pursuant to Section 2305.15(A), that four-month period continues to toll the limitations period as defendant has not returned to Ohio.

Even if plaintiff is required to comply with the savings statute, the claim is timely.  Defendant relies on *Saunders v. Choi*, 466 N.E.2d 889 (Ohio 1984) for the proposition that tolling under Section 2305.15(A) is not available for claims asserted under Section 2305.19(A).  In *Saunders*, plaintiff's claim accrued on December 23, 1975.  Plaintiff filed her initial complaint within the one-year statute of limitations.  This complaint was dismissed for failure to prosecute.  At this point, absent invocation of the savings statute set forth in O.R.C. § 2305.19(A), any new complaint would be time-barred as the one-year statute of limitations would have expired on December 23, 1976.  Plaintiff filed a second complaint on August 30, 1979, which was within

---

another statutory provision.

9

one year of the dismissal of plaintiff's original suit.  Defendant, however, was absent from the state of Ohio "since June 30, 1977."  In other words, defendant appears to have left the state *after* the statute of limitations expired.

The court held that the "tolling provisions of R.C. 2305.15 are expressly inapplicable to an action brought under R.C. 2305.19, and cannot be used to extend the one-year time limitation within which to commence an action under Civ.R. 3(A)."  *Id*. at syllabus par.1.  The court first noted that "but for the existence of R.C. 2305.19, appellant would have been unable to maintain her cause of action."  Therefore, in order to move forward with her case, plaintiff had to comply with the rules set forth Section 2305.19(A).  The version in effect at the time provided that, if the first action fails "otherwise than on the merits," the plaintiff "may commence a new action within one year after" the date the first action is dismissed.  *Id*.  The court then turned to Oh.R.Civ.Pro. 3(A), and noted that an action is not "commenced" unless service of process is obtained within one year of the date of filing.  Plaintiff did not serve the second complaint on defendant within one year.  Plaintiff argued that the tolling provision contained in Section 2305.15(A) tolls the time for her *to perfect service*.  In rejecting her argument, the court held that Section 2305.15(A) specifically identifies the provisions to which it applies.  Section 2305.19(A) is not listed.  Thus, "the express language of R.C. 2305.15...effectively denies its application to an action filed under R.C. 2305.19."  *Id*. at 892. *See also, Goodwin v. T.J. Schimmoeller Trucking*, 2008 WL 170007 (Oh. Ct. App. Jan. 22, 2008)(Section 2305.15(A) does not apply to extend requirements set forth in Section 2305.19(A) when original statute of limitations expired

prior to refiling of second action)[4].

But, notably, the version of Section 2305.19(A) in effect at the time of the *Saunders* decision permitted refiling only within one year of the original filing.  It did not allow a party to alternatively commence the action "within the period of the original applicable statute of limitations."  In *Saunders*, defendant left the state *after* plaintiff filed the initial complaint. Therefore, Section 2305.15(A) could not possibly be applied to toll the original statute of limitations.   In order to defeat a statute of limitations argument, plaintiff had to rely on Section 2305.19(A), which required that plaintiff commence the action within one year.  But, plaintiff failed to do so.  To excuse her failure, plaintiff argued that Section 2305.15 tolled the time for "commencement" under Oh.R.Civ.Pro. 3(A).

The Ohio Supreme Court rejected plaintiff's attempt to read a tolling requirement into Rule 3(A).  Rather, *Saunders* held that tolling under Section 2305.15(A) does not apply to toll the service requirements under Oh.R.Civ.Pro. Rule 3(A).  It could not have addressed the issue presented here, which is whether a party can rely on Section 2305.15(A) tolling to establish that the action is commenced "within the period of the original applicable statute of limitations" under Section 2305.19 because, at the time *Saunders* was decided, Section 2305.19(A) contained no such provision.

For this reason, defendant's citation to *Coburn v. Thrush*, 2006 WL 2924759 (Oh.Ct.App. Oct. 10, 2006) is distinguishable.  There, the court first determined which version of

---

[4]       In *Goodwin*, defendant did not leave the state until after the filing of the initial lawsuit.  Therefore, *Goodwin* is consistent with *Saunders* in that the plaintiff in both cases relied on the tolling provisions in Section 2305.15(A) solely for the purpose of tolling the requirements of Rule 3(A).

Section 2305.19(A) applied to the case before it.  After determining that the prior version applied, the court noted that *Saunders* held that "the tolling provisions of R.C. 2305.15 are not applicable to an action brought pursuant to the savings provision of R.C. 2305.19," and since plaintiffs failed to file their action within "one year of the dismissal of the original complaint as required by R.C. 2305.19(A)," the action was time-barred.  But, again, the statute at issue in *Coburn* did not alternatively permit a plaintiff to commence the action within the "period of the original statute of limitations."  Accordingly, *Coburn* offers little guidance.

The Court acknowledges that there are Ohio cases that broadly read *Saunders* as prohibiting reliance on Section 2305.15(A) for all cases brought pursuant to Section 2305.19(A). By way of example, defendant cites *Garrett v. Gill*, 2001 WL 2695881 (July 13, 2011). Respectfully, the Court disagrees with *Garrett's* reading of *Saunders*.  As an initial matter, *Garrett* indicated that plaintiff  "had to bring her personal injury action within two years from the date of the traffic accident," even though defendant was at all times out of state.  But, pursuant to Section 2305.15(A), this initial action undoubtedly was subject to tolling.  Thus, it does not appear that the plaintiff had an obligation to bring this initial action within two years from the date of the accident.  Later in the opinion, *Garrett* appears to reverse course by indicating that "we are not making any judgment as to whether *Garrett* would have been successful in applying the tolling provisions under R.C. 2305.15 to the statute of limitations period for a personal injury action if she had chosen to delay bringing her action."

Regardless, *Garrett* held that plaintiff's action was not timely.  Plaintiff timely filed her action, but failed to comply with Rule 3(A).  This part is consistent with *Saunders*.  *Saunders* simply stands for the proposition that if you file an action, you must comply with Rule 3(A)'s

*commencement* requirements without reliance on Section 2305.15(A) tolling.  The plaintiff in *Garrett* failed to do so.  *Garrett*, however, went one step further.  *Garrett* held that the failure to commence the action meant that the claim was *also* barred by the statute of limitations.  But, in relying on *Saunders*, the *Garrett* court seemingly did not recognize that *Saunders* involved a prior version of Section 2305.19(A).  The court held:

> Accordingly, the effect of *Saunders* combined with a plain reading of R.C. 2305.15 is that a plaintiff may choose to defer the filing of his complaint indefinitely while the defendant is absent from the state under R.C. 2305.15, but if the plaintiff does file during such time, service must nevertheless be obtained within one year from the date of filing under Civ.R. 3(A).  Thus, although *Garrett* could have indefinitely waited to bring her cause of action while the defendants were absent from the state, once she made the choice to file the action, she had to abide by Civ.R. 3(A) and serve the defendants within one year.

The problem with this conclusion is that it reads the second part of Section 2305.19(A) out of the statute for purposes of the *statute of limitations*.  In *Saunders*, defendants left the state after the statute of limitations itself expired.  Therefore, Section 2305.15(A) could not be applied to toll the statute of limitations for the claim itself.  Rather, it could only even arguably be used to toll the time for commencement under Rule 3(A).  The court rejected this approach for the simple reason that it wholly lacked statutory support.  Because plaintiff failed to commence the refiled action within the one-year time period allowed under Rule 3(A), dismissal was required.

The next question thus becomes whether a dismissal under Rule 3(A) should be with or without prejudice.  If the claim is time-barred at the time of refiling, as it was in *Saunders*, the dismissal will be with prejudice.  The theory is based on the notion that an action that is filed, but not "commenced," is treated as if it never existed.  Since cases involving Rule 3(A) universally arise in the context of statute of limitations defenses, these cases are dismissed *on statute of limitations grounds* and those dismissals are with prejudice.  But the converse is not

13

necessarily true. If a plaintiff files an action and does not obtain service, courts typically dismiss the action without prejudice for lack of service of process. Thus, contrary to *Garrett,* the fact that plaintiff did not "commence" the action within the time frame afforded under Rule 3(A) does not *automatically* result in a dismissal with prejudice based on statute of limitations. This is because the failure to have "commenced" the action, which means that no action ever existed, does not prevent a future action from being timely file if the statute of limitations has not yet expired.

*Garrett* concluded that plaintiff's failure to comply with Rule 3(A) resulted in a dismissal with prejudice. But *Garrett* conducted no analysis whatsoever as to whether the underlying statute of limitations had expired at the time of the dismissal of the first action. The Court disagrees with *Garrett's* holding that failure to comply with Rule 3(A) automatically results in a dismissal with prejudice with regard to cases in which the statute of limitations has not yet run. The Court finds that the better interpretation of *Saunders* is simply that a party may not rely on Section 2305.15(A) tolling to establish compliance with Rule 3(A) when the underlying claim is barred by the statute of limitations at the time of refiling. *Saunders* does not say that Section 2305.15(A) cannot toll the underlying statute of limitations itself. Nor does *Saunders* hold that *every* dismissal under Rule 3(A) is a dismissal with prejudice.

Having so concluded, the Court turns to whether plaintiff's claim is timely under the plain language of Section 2305.19(A).[5] The Court finds that Ohio's savings statute does not *displace* tolling for purposes of a statute of limitations defense. Section 2305.19(A) provides

---

[5]     The Court reiterates that this analysis presumes that plaintiff must comply with this provision in order to assert his claims.

that a claim may be refiled so long as it is refiled within the "period of the original applicable statute of limitations."   Defendant argues that the "period of the original applicable statute of limitations" expired one year after the events giving rise to the claim occurred, *i.e.* in 2011.  In other words, no tolling should be considered.[6]  The Court finds that the "period of the original applicable statute of limitations" set forth in the second sentence of O.R.C. § 2305.19(A) includes any available tolling provisions.  Pursuant to Section 2305.16, plaintiff had until one year from the date of his eighteenth birthday to file the action.  In addition, Section 2305.15(A), provides that defendant's absence from Ohio "shall not be computed as *any part of a period* within which the action must be brought."  Rather, pursuant to Section 2305.15(A), the "original...statute of limitations" excludes the time after the defendant left Ohio, as no "part of this period" can be included to determine when an "action must be brought."  Because four months remain prior to the expiration of time in which Ohio law requires plaintiff to bring this action, the Court finds that this lawsuit is not untimely under Ohio's saving statute.  As such, summary judgment is not warranted.

2.    Constitutionality of O.R.C. § 2305.15(A)

Defendant next argues that Section 2305.15(A) is unconstitutional.  This Court previously accepted defendant's argument that the provision violates the Dormant Commerce Clause.  The Sixth Circuit reversed.   Defendant now moves for summary judgment on the same grounds.  Plaintiff responds that the Sixth Circuit already decided this issue and that the "law of

---

[6]    Oddly, defendant seemingly acknowledges that tolling might be allowed under Section 2305.16, which tolls the statute of limitations until one-year after plaintiff turned eighteen.  It is not clear why one type of tolling would apply, but not others.

15

the case" doctrine prevents this Court from re-litigating the constitutionality of the provision.  In reply, defendant notes that the Sixth Circuit did not foreclose the possibility that defendant may be able to present evidence establishing that "discouraging residents from relocating" creates a cognizable burden on interstate commerce.

Upon review, the Court finds that summary judgment is not warranted.  Although the Sixth Circuit may have left open the possibility that defendant could establish a cognizable burden on interstate commerce, the court indicated that it was a "a doubtful proposition."   Here, defendant attempts to meet this high hurdle by asking that the Court take judicial notice of certain law review articles, working papers, blogs, and websites directed at the lengths various companies may go to in order to avoid litigation risks.  As an initial matter, the Court will not take judicial notice of the evidence relied on by defendant.  In order to take judicial notice, the fact at issue must not be subject to reasonable dispute because it is either (1) generally known within the jurisdiction or (2) accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Defendant wholly fails to explain how the materials he cites satisfy this standard.

Even if the Court considers the materials, defendant is not entitled to summary judgment.  The materials generally address the concept that businesses may make strategic decisions, including where to locate or whether to move, based on differences in the laws and the corresponding litigation risks.  But the fact that certain laws may favor certain business concerns–including litigation concerns–does not mean that the laws place an improper burden on interstate commerce.  By way of example, the Court notes that many corporations historically incorporated in Delaware due to favorable corporate law.  That does not mean that the corporate

16

laws of other states are unconstitutional.  Defendant also discusses the fact that the certain companies, including Apple Inc., left the Eastern District of Texas because of certain patent law concerns.  But, this has nothing to do with whether Ohio's tolling statute burdens interstate commerce.  The only "evidence" defendant arguably points to is a blog purportedly identifying the "10 biggest legal mistakes" retiring doctors make, as well as an internet article discussing the purchase of post-retirement insurance coverage to assist with claims that are tolled for various reasons.   Even assuming the Court could somehow take judicial notice of these materials, they fall far short of establishing that defendant is entitled to a finding that Section 2305.15(A) is unconstitutional.  The materials are not directed and this provision and, in fact, involve other tolling provisions, none of which are being challenged here.  The fact that litigants may need to be aware of statutes of limitation or that they may make certain decisions based on those statutes does not mean that statutes of limitation or tolling provisions impose an improper burden on interstate commerce.  Summary judgment is not warranted.

Defendant next argues that Section 2305.15(A) violates the Equal Protection Clause. According to defendant, the statute is facially unconstitutional because it cannot survive even rational basis review.  The Court disagrees.  In *G.D. Searle & Co. v. Chon*, 455 U.S. 404, 410 (1982), the Supreme Court rejected a challenge nearly identical to the one defendant makes here. The Supreme Court held that a tolling provision that treats out-of-state defendants differently from in-state defendants does not violate equal protection.  The Sixth Circuit cited this opinion favorably in the prior appeal of this case.  *Garber v. Menendez*, 888 F.3d 839, 846-47 (6th Cir. 2018)(rejecting defendant's argument that Section 2305.15(A) serves "no useful purpose" because, "when an in-state defendant moves out of the State, as the facts of this case illustrate,

17

the defendant "remains potentially difficult to locate" and "may not be so easy to find and serve").  Thus, the Court rejects defendant's argument that Section 23015.15(A) fails rational basis review.

       3.       Expert witnesses

Defendant argues that plaintiff's expert witnesses are not competent to testify under the Ohio Rules of Evidence.   Plaintiff presents two experts– Dr. Bomze and Dr. Venkatasubramanian.  Dr. Bomze is a pediatrician and Dr. Venkatasubramanian is a neurologist. According to defendant, Dr. Bomze's testimony is inadmissable because he spends less than 50% of his time practicing medicine.  Defendant further claims that Dr. Venkatasubramanian's testimony is inadmissible because she is a general neurologist with no experience in pediatrics. According to defendant, since all of plaintiff's expert testimony is inadmissible, summary judgment is proper.

Pursuant to Oh.R.Evid. 601(E),[7] an expert giving medical testimony on the issue of liability in a medical claim, is not competent to testify unless the witness is licensed to practice medicine, "devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school," and practices in a substantially similar speciality as the defendant.  Defendant argues that Dr. Bomze does not devote at least one-half of his time to the practice or teaching of medicine.

Dr. Bomze testified that he is semi-retired.  He provides clinical care to patients at a local community clinic two half-days per week.  In addition, Dr. Bomze spends time working with a

---

[7]      This rule was renumbered.  The prior version of the rule was located in Section (D) of Rule 601.

local school district to assist with IEP plans.  Dr. Bomze also spends time working on expert

legal work.  At his deposition, he testified as follows:

> And so combined, [expert legal work] is probably half my time, and the other half of my
> time is doing the– my office clinical, in clinic, plus administrative
> work that I need to do for the office and other things, my own administrative work.

Defendant argues that Dr. Bomze acknowledges that he spends at least half of his time on

expert legal work.  Defendant points out that Dr. Bomze acknowledges that the remaining 50%

of his professional time includes tasks devoted to administrative work.  Because this time cannot

be considered "active clinical practice," Dr. Bomze is not competent to testify in this matter.

Defendant further points out that Dr. Bomze earns approximately $200,000 per year

reviewing and testifying as a medical expert in legal cases.  According to defendant, Oh.R.Evid.

610(E) is designed to prevent "professional witnesses" from testifying with respect to medical

claims.

In response, Dr. Bomze offers his own affidavit.  There, he avers as follows:

- His administrative duties include "assisting with the state run vaccine program,
  teaching medical student and nurse practitioner students, and consulting on
  pediatric policy and pediatric patient management through the clinic;"

- With regard to his role at the school, his role includes, "review, implementation,
  and clinical approval for IEPs for students the [sic] school district."  In addition,
  Dr. Bomze is a "medical consultant...for medical questions, issues, and policy."
  In addition, Dr. Bomze is part of the district committee for handling the COVID-
  19 pandemic;

- Half of the legal cases that Dr. Bomze is involved with are child abuse and
  neglect cases, one-quarter of the cases are products liability cases, and the
  remaining quarter are medical malpractice cases.

Plaintiff argues that these activities count as "active clinical practice."  As such, Dr.

Bomze is competent to testify under Oh.R.Evid. 601(E).  In the alternative, plaintiff notes that

Bomze spent nearly 40 years in private practice.  At the time of the incident, Dr. Bomze spent 90-95% of his time in active clinical practice.  This is not a situation where Dr. Bomze is simply a professional witness.  Rather, Dr. Bomze retired after a long career in the active practice of medicine.  According to plaintiff, Ohio courts recognize that retired physicians are competent to testify even though they may not technically meet the requirement set forth in Oh.R.Evid. 601(E).

Upon review, the Court rejects defendant's argument.  Assuming that Dr. Bomze does not currently devote 50% of his professional time to "active clinical practice," exclusion is nonetheless improper.   In *Clemer v. Rodgers*, 871 N.E.2d 557 (Ohio 2007), the Ohio Supreme Court first noted that the rule is written in the present tense.  *Id*. at 562.  Thus, generally speaking, courts should assess the competency of the witness at the time the testimony is offered.  This, however, does not "preclude a trial court from exercising discretion in an appropriate case to determine that a physician is competent to testify."  *Id*.  In *Clemer*, the Ohio Supreme Court determined that the trial court did not abuse its discretion in determining that the witness was competent, even though at the time of trial the witness did not devote 50% of his time to active clinical practice.  Due to a number of continuances, as well as a bankruptcy stay, at the time the trial eventually occurred, the witness no longer met the criterion.  But, the witness "satisfied the requirements of [Evid.R. 601(E)] at the time the cause of action accrued, at the time of filing suit, and during the first three years of this litigation."  *Id*.  This, coupled with the fact that the continuances and delays resulted from acts of the defendant, counseled in favor of allowing the testimony.  *Id*.

Courts interpreting *Clemer* have allowed the introduction of expert medical testimony

20

when the expert retires from the practice of medicine, but has a long history of "active clinical practice."  In *O'Malley v. Forum Health*, 2013 WL 3211477 (Oh. Ct. App. June 24, 2013), plaintiff offered as an expert witness a physician who did not devote half of his professional time to active clinical practice.  The court of appeals nonetheless affirmed admission of his testimony.  The court noted that *Clemer* held that "disengagement from the active clinical practice of medicine...[does not] render [a witness] incompetent to testify."  *Id*. at *5.  In other words, retirement from the practice of medicine does not "cause [a physician] to become a 'professional witness.'" *Id*.  *O'Malley* further indicated that *Clemer* resulted in a judicially created exception to the strict language in Rule 601(E), when "specific facts" exist.  *Id*.

Because the witness at issue in *O'Malley* had an extensive "experiential background" practicing medicine, including 30 years of practice, he satisfied Rule 601(E).  His resume was quite impressive.  In addition, at the time the claim *accrued*, the witness devoted more than half of his time to clinical practice.  The court further noted that at the time of the trial, the witness continued to participate in medical conferences, as well as continuing education.  Other Ohio courts agree.  *See, e.g.*, *Aldridge v. Garner*, 825 N.E.2d 201, (Oh.Ct.App. 2005)("Because we hold that Dr. Kirwin's experiential background renders him competent to testify in accordance with the purpose intended under Evid.R. 601(D)'s active-clinical-practice requirement, we hold that the trial court abused its discretion in excluding his testimony.");  *Crosswhite v. Desai*, 580 N.E.2d 1119, 1124 (Oh. Ct. App. 1989)(deciding pre-*Clemer* that "retirement from medical practice, standing alone, has not been considered an impediment to competence).[8]

---

[8]  The Court acknowledges that at least one Ohio court decided that *Clemer* does not extend beyond the situation in which a defendant causes delays that result in the incompetency of the witness.  *See,*

Upon review, the Court finds that Dr. Bomze is competent to testify.  The purpose of Rule 601(E) "is to prohibit a physician who makes his living as a professional witness from testifying on the liability of physicians who devote their professional time to the treatment of patients." *Clemer*, 871 N.E.2d at 226.  Here, after graduating from medical school at the University of Pennsylvania, Dr. Bomze worked in private practice as a pediatrician for at least 30 years.  He has written a number of papers, including recent publications.  His resume reveals a long career of active clinical practice.  Even during his semi-retirement, Dr. Bomze continues to engage in some degree of active clinical practice.  The Court rejects defendant's argument that Dr. Bomze is a professional witness.  As an initial matter, the Court notes that at least half of Dr. Bomze's legal work is directed at criminal child abuse cases.  Thus, in this capacity he is not "testifying on the liability of physicians."   Regardless, unlike Dr. Bomze who continues to engage in some degree of active clinical practice, its appears that other retired physicians do not.  Yet, those physicians are nonetheless competent to testify.  *See*, *O'Malley,* 2013 WL 3211477 (noting only that retired physician continued to attend conference and continuing education classes).  Moreover, as relied on in *Clemer* and other Ohio courts, Dr. Bomze spent 90-95% of his professional time engaged in active clinical practice at the time the claim accrued.  (Doc. 48-1 at par. 10).  Thus, he is intimately familiar with the applicable standard of care.  For these reasons, the Court finds that Dr. Bomze is competent to testify and summary judgment is not warranted.  Having so concluded, the Court need not address defendant's argument regarding Dr. Venkatasubramanian.  Because Dr. Bomze is competent to testify, there is sufficient standard of

---

*Johnson v. Abdullah*, 136 N.E.3d 581 (Oh.Ct.App. 2019).  The Court disagrees with *Johnson's* strict reading of *Clemer*.

care evidence in the record to survive summary judgment.

In addition, it appears that Dr. Venkatasubramanian will offer testimony regarding whether a referral to an emergency center should have occurred at various points in plaintiff's treatment. This is based on the severity and worsening of plaintiff's back pain, as well as the presence of fever. Plaintiff points out that defendant acknowledged that he performed a musculoskeletal exam, as well as a neurological exam, when plaintiff came in for treatment. Dr. Venkatasubramanian practices in an outpatient clinic and performs these same exams. Because defendant testified that he performed a neurological exam, Dr. Venkatasubramanian may testify as to whether the defendant performed that common exam properly and made the appropriate recommendations based on that exam. The Court need not determine at this stage the precise testimony that is admissible at trial. The Court finds that, for purposes of summary judgment, Oh.R.Evid. 601(E)(3) is satisfied and wholesale exclusion of Venkatasubramanian's testimony is not warranted. *See, e.g., Alexander v. Mt. Carmel Med. Center*, 383 N.E.2d 564 (Ohio 1978)(reversible error to exclude testimony of podiatrist in action against orthopaedic surgeons regarding propriety of cast application); *McMichael v. Akron General Medical Center*, 97 N.E.3d 756 (Oh. Ct. App. 2017)(non-emergency room physician allowed to testify regarding standard of care applicable to any physician where emergency room physician failed to read patient's medical records). Because there is expert testimony in the record as to whether defendant breached the standard of care, summary judgment is not warranted.

## **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment on Behalf of Defendant Heriberto Menendez, M.D. (Doc. 43) is DENIED.

23

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 11/18/20